**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KENTON SHAFER, THERESA SHAFER, ARLEN SHAFER and SYLVIA SHAFER<br>    Plaintiffs,<br><br>v<br><br>RANGE RESOURCES-APPALACHIA, LLC,<br>    Defendant. | 2:10-cv-1142 |

## MEMORANDUM OPINION AND ORDER

Pending now before the Court is DEFENDANT RANGE RESOURCES – APPALACHIA, LLC'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT (Document No. 4). Defendant ("Range Resources") filed a brief in support, Plaintiffs filed a response in opposition, Defendant filed a reply brief and the motion is ripe for disposition.

Factual and Procedural Background

On August 30, 2010, Plaintiffs filed a one-count Complaint which alleges that Range Resources breached a contract to pay a bonus in exchange for the right to develop oil and gas on their property. Plaintiffs' counsel did not attach the relevant contractual documents. However, Defendant has submitted as exhibits to its motion to dismiss an Oil and Gas Lease, an Addendum, and a Memorandum of Oil and Gas Lease, all dated August 30, 2008 and signed by Plaintiffs. Also attached as exhibits to Range Resources' motion are copies of letters to Plaintiffs (the "DPO Letters"), also dated August 30, 2008, which bear Plaintiffs' signatures.[1] The Complaint references these documents and their authenticity has not been disputed. Therefore,

---

[1] Defendant refers to these letters as "Dear Property Owner" letters and Plaintiffs refer to the letters as the "Side Agreement" or "Bonus Agreement."

1

the documents will be considered in ruling on the motion to dismiss. *See Pension Benefit Guar. Corp. v. White Consol. Industries, Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993).

The pertinent facts, as alleged in the Complaint, are relatively straight-forward. Plaintiffs, collectively, own 52.299 acres of land in Monongalia County, West Virginia, including all of the oil and gas rights associated with the property. A representative of Range Resources, or "landman," contacted Plaintiffs in June 2008 to explore a leasing arrangement to produce the oil and gas associated with Plaintiffs' property. At the time, other natural gas producers also contacted Plaintiffs regarding a similar oil and gas production lease.

In July 2008, Range Resources presented a draft lease agreement. Plaintiffs responded with concerns about various terms and Range Resources agreed to modify the draft by including many non-standard provisions and an eighteen percent (18%) royalty. In ¶ 14, Plaintiffs allege that the non-standard provisions "were presented to Range Resources management, who reviewed, redrafted and incorporated the revisions and approved the terms of the lease negotiated by Range's landman." Range Resources presented the revised documents to Plaintiffs. Plaintiffs executed the alleged "final" lease documents and returned them to Range Resources on August 30, 2008. Plaintiffs' signatures on the Oil and Gas Lease and Memorandum of Oil and Gas Lease documents were notarized. However, these documents were not signed by a representative of Range Resources and the signature lines were left blank. The Addendum was signed by Plaintiffs but not notarized, and had no signature line for Range Resources. The term of the proposed lease was five years.

Plaintiffs allege that they chose to do business with Range Resources because it offered an attractive up-front bonus payment. Plaintiffs allege that contemporaneously with entering into the lease, the parties entered into a side agreement (the "DPO Letter") in which Range

Resources agreed to pay a total bonus of $130,747.50 ($65,373.75 to each couple) within ninety days. Plaintiffs signed the DPO Letter on August 30, 2008 and then refrained from marketing their property to other oil and gas producers.

The DPO Letter is on Defendant's letterhead and contains the following relevant text:

- "Thank you for entering into an oil and gas lease with our firm. We are pleased to add your property to our exploration and development program!"
- "This [bonus] payment is **made after** the lease has been properly executed by each interest owner, our representative completes a title check at the courthouse of the county in which your land lies **and our management approves the lease**." (Emphasis added).
- "Range Resources – Appalachia, LLC hereby agrees to pay the following oil and gas owner the amount below set forth **subject to**: 1) approval of title; **and 2) management approval of the lease.**" (Emphasis added).
- "LEASE PAYMENT AMOUNT: $65,373.75, which shall be paid to Lessor within 90 days from lease execution date . . . ."
- "Date of Execution: 8/30/08, by LANDMAN: Taylor A. Harris."[2]
- Finally, there is a heading: "LESSOR: ACCEPTS AND AGREES," immediately above the signature lines for Plaintiffs.

Defendant failed to make a bonus payment within 90 days of August 30, 2008. Plaintiffs contend that this failure constituted a breach of contract. Defendant denies that the parties ever entered into a binding contract. Defendant also contends that approval by its management is a "condition precedent" to payment of any bonus. Finally, Defendant contends that enforcement of a five-year lease is barred by the statute of frauds.

Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the legal sufficiency of the Complaint filed by Plaintiff. The United States Supreme Court has held that "[a] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

---

[2] The Landman's name is typed. There does not appear to be a signature from Taylor Harris.

of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alterations in original).

The Court must accept as true all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. However, as the Supreme Court made clear in *Twombly,* the "factual allegations must be enough to raise a right to relief above the speculative level." *Id*. The Supreme Court has subsequently broadened the scope of this requirement, stating that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009).

However, nothing in *Twombly* or *Iqbal* has changed the other pleading standards for a motion to dismiss pursuant to Rule 12(b)(6). That is, the Supreme Court did not impose a new, heightened pleading requirement, but reaffirmed that Federal Rule of Civil Procedure 8 requires only a short, plain statement of the claim showing that the pleader is entitled to relief, not "detailed factual allegations." *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (*citing Twombly*, 550 U.S. at 552-53). Additionally, the Supreme Court did not abolish the Rule 12(b)(6) requirement that "the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id*. (*citing Twombly*, 550 U.S. at 553).

Legal Analysis

Defendant contends that the Complaint should be dismissed for failure to state a valid claim for the following reasons: (1) the documents demonstrate that no contract was formed, as Range Resources never manifested its assent to enter into a contract; (2) even if a contract was formed, Range Resources did not breach it because there was an express condition precedent

4

(i.e., "management approval") to Defendant's duty to make the bonus payment; and (3) the contract is unenforceable pursuant to the statute of frauds. Defendant cites three opinions from the United States District Court for the Middle District of Pennsylvania which have granted motions to dismiss similar complaints filed by property owners against Range Resources. *See Hollingsworth v. Range Resources – Appalachia, LLC*, 2009 U.S. Dist. LEXIS 100371 (M.D. Pa. July 29, 2009) (Magistrate Judge Report and Recommendation); *Hollingsworth v. Range Resources-Appalachia, LLC*, 2009 WL 3601586 (M.D. Pa. October 28, 2009) (Munley, J.) (adopting Report and Recommendation); and *Lyco Better Homes, Inc. v. Range Resources-Appalachia, LLC*, 2009 U.S. Dist. LEXIS 110425 (M.D. Pa. May 21, 2009) (McClure, J.).

Plaintiffs rely heavily on a recent similar case in this district, *Valentino v. Range Resources-Appalachia, LLC*, 2010 WL 2034550 (W.D. Pa. 2010), in which Chief Judge Gary L. Lancaster denied Range Resources' motion to dismiss. In essence, Plaintiffs urge this Court to adopt the analysis set forth in *Valentino*. Plaintiffs also emphasize that in this case, unlike *Valentino, Hollingsworth* and *Lyco Better Homes*, Range Resources did not expressly reject or "void" the proposed lease.

The Court acknowledges that this is a close case. It is not surprising that the prior decisions cited by the parties have involved substantially the same issues and documents, yet reached different conclusions. The United States Court of Appeals for the Third Circuit has not yet ruled on the issue.[3]

---

[3] *Hollingsworth* and *Lyco Better Homes* settled while on appeal.

The basic question in this case is whether a contract was formed. In *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575 (3d Cir. 2009), the Court of Appeals summarized the applicable principles of Pennsylvania law[4]:

> The first element of the test for enforceability of a contract is whether both parties manifested an intention to be bound. In assessing intent, the object of inquiry is not the inner, subjective intent of the parties, but rather the intent a reasonable person would apprehend in considering the parties' behavior.

*Id*. at 582 (citations omitted). Documents having the surface appearance of contracts may, in actuality, be evidence of mere negotiations by the parties. Similarly, evidence of a general agreement to enter into a binding contract in the future is not enforceable. *Id*. On the other hand, "[m]utual manifestations of assent that are in themselves sufficient to make a contract will not be prevented from so operating by the mere fact that the parties also manifest an intention to prepare and adopt a written memorial thereof...." *Id*.

In *Channel Home Centers, Div. of Grace Retail Corp. v. Grossman,* 795 F.2d 291 (3d Cir. 1986), the Court provided further guidance to determine whether a contract has been formed under Pennsylvania law. A Court must ask: (1) "whether both parties manifested an intention to be bound by the agreement"; (2) whether the terms are sufficiently definite; and (3) whether there was consideration. *Id*. at 299. In this case, the terms are definite and there is substantial consideration – the only real question is the parties' intent. The *Channel Homes* Court then explained: "In determining the parties' intentions concerning the letter of intent, we must examine the entire document and the relevant circumstances surrounding its adoption." *Id*.

---

[4] Defendant contends that West Virginia law governs this action, as that state has the greatest interest in this contract dispute. Plaintiffs contend that Pennsylvania law applies. Both parties agree, however, that there "are no substantive differences between Pennsylvania and West Virginia law regarding contract formation." Because no conflict exists, the Court will apply Pennsylvania law. *Williams v. Stone*, 109 F.3d 890, 893 (3d Cir. 1997). The Court further notes that *Hollingsworth*, *Lyco Better Homes* and *Valentino* have all applied Pennsylvania law.

"[W]hen the record contains conflicting evidence regarding intent, the question of whether the parties formed a completed contract is one for the trier of fact." *Id.* at 300 n.9.

The *American Eagle* Court rejected the argument that the mere lack of a signature prevented formation of a binding contract, and explained:

> Signatures are not dispositive evidence of contractual intent. *See Commerce Bank/Pennsylvania v. First Union Nat'l Bank*, 911 A.2d 133, 145-46 (Pa.Super.Ct. 2006) (" 'As a general rule, signatures are not required for a binding contract unless such signing is expressly required by law or by the intent of the parties.' " *(quoting Shovel Transfer & Storage, Inc., v. Pa. Liquor Control Bd.*, 559 Pa. 56, 739 A.2d 133, 136 (1999))). The parties, therefore, did not need to sign the London Memorandum to reflect their intent that it form a binding contract.

*Id.* at 584.

Applying these principles, and construing the facts and all reasonable inferences therefrom in the light most favorable to Plaintiffs, the Court concludes that Range Resources' motion to dismiss should be denied. The DPO Letter certainly provides that payment of the bonus is "subject to … management approval of the lease." Moreover, the statute of frauds will pose a substantial obstacle to Plaintiffs' ability to recover in this case, as Defendant's signature is not on the lease documents. Nevertheless, Plaintiffs have alleged that Range Resources accepted the lease and bonus terms and entered into a binding contract. Although Defendant argues that such assent was never provided, this fundamental factual dispute cannot be resolved as a matter of law solely by examination of the contract documents. Rather, the Court must also consider the relevant circumstances.

The term "management approval" was not defined in the DPO Letter and it is unclear how such "approval" was to be obtained and communicated. Plaintiffs contend that such "management approval" can be proven in this case by, inter alia: (1) the action of negotiating non-standard terms with Plaintiffs; (2) the review, redrafting and incorporation of the non-

standard terms into revised lease documents prepared by Range Resources corporate officials; (3) the presentation of the revised lease documents by Range Resources to Plaintiffs; (4) the statement in the DPO Letter: "Thank you for entering into an oil and gas lease with our firm. We are pleased to add your property to our exploration and development program"; and (5) the lack of any disapproval of the lease by Range Resources. Plaintiffs note that in *Hollingsworth* and *Lyco Better Homes*, Range Resources had expressly communicated a rejection of the proposed agreement by returning the documents to the property owners stamped "Void." Defendant acknowledges that no similar disapproval occurred in this case, although it contends that such disapproval was not necessary. Plaintiffs also contend that the term "management approval" should be construed to be limited to the tasks specifically listed in the DPO Letter. In other words, Plaintiffs reason that "management approval" could be withheld only if the proper persons had not executed the lease, their oil and gas rights were not intact, or a title check disclosed reservations of rights by others that invalidated the lease. At this stage of the case, the Court concludes that Plaintiffs' position is plausible.

Range Resources argues that the signing of the DPO Letter by Plaintiffs was an "offer," which Range Resources never "accepted." However, the DPO Letter, directly above Plaintiffs' signatures, states: "LESSOR: ACCEPTS AND AGREES." Thus, the DPO Letter appears to reflect that the Plaintiffs' signatures constituted an acceptance of Range Resources' offer. In other words, the text of the DPO Letter – which was drafted and prepared by Range Resources – is at odds with Defendant's current legal position. At this stage of the case, the conflict must be resolved in favor of Plaintiffs.

Finally, Defendant's reliance on the statute of frauds is unavailing at this stage of the case. Under Pennsylvania law, the statute of frauds relating to leases in excess of three years, 68

P.S. § 250.202, is "waivable."  Thus, the statute of frauds may be introduced only as an affirmative defense and not at the motion to dismiss stage.  *Blumer v. Dorfman*, 289 A.2d 463, 468 (Pa. 1972) (citations omitted).  Such leases are not void, although the statute of frauds may render the durational term unenforceable.  *Flight Systems, Inc. v. Electronic Data Systems Corp.*, 112 F.3d 124, 127-29 (3d Cir. 1997) (statute of frauds will not bar recovery if Defendant admits to the existence of a contract in pleadings or testimony).    Moreover, it is possible that Plaintiff will be able to demonstrate sufficient evidence of a "signed" writing to satisfy the statute of frauds.  In *Flight Systems*, the Court explained:  "Any mark or symbol-including a typewritten name-will be deemed to constitute a signature for the purposes of the statute if it is used with the declared or apparent intent to authenticate the memorandum.  *Id*. at 129 (*citing Hessenthaler v. Farzin*, 564 A.2d 990, 993 (Pa.Super.1989)).  The Court notes that the DPO Letter contains the typewritten name of "Landman: Taylor A. Harris."

In accordance with the foregoing, DEFENDANT RANGE RESOURCES – APPALACHIA, LLC'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT (Document No. 4) will be **DENIED**.

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENTON SHAFER, THERESA SHAFER, ARLEN SHAFER and SYLVIA SHAFER<br>Plaintiffs,<br><br>v<br><br>RANGE RESOURCES-APPALACHIA, LLC,<br>Defendant. | )<br>)<br>)<br>) 2:10-cv-1142<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER OF COURT

AND NOW this 16th day of February, 2011, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that DEFENDANT RANGE RESOURCES – APPALACHIA, LLC'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT (Document No. 4) is **DENIED**.

Defendant shall file an Answer to the Complaint on or before March 2, 2011.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

**Cc:**
**Joel S. Sansone, Esquire**
Email: joelsansone03@msn.com

Jared S. Hawk, Esquire
Email: jared.hawk@klgates.com